UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

ALAN B. ENGEBRETSON,
MARGARET ANN ENGEBRETSON,

        Plaintiffs,

        v.                                                  Case No. 03-C-0553

HUMANA INSURANCE COMPANY,

        Nominal Defendant,

        and

THE COLORADO CYCLIST, INC.,

        Defendant and Third-Party
        Plaintiff,

        and

CNA NATIONAL WARRANTY CORPORATION,
ROYAL INSURANCE COMPANY OF AMERICA,
ABC INSURANCE COMPANY,
DEF INSURANCE COMPANY,

        Defendants and Third Party Defendants.

---

DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT

        In this case, plaintiffs Alan and Margaret Engebretson sue defendant Colorado Cyclist, Inc., regarding injuries sustained by Alan Engebretson while riding a defective bicycle purchased from Colorado Cyclist. The plaintiffs assert that the bicycle component that allegedly failed and cause the accident – a front wheel rim – was purchased by Colorado Cyclist from a division of Schwinn/GT Corporation, an entity that is being liquidated pursuant to a confirmed Chapter 11 Plan. Colorado Cyclist filed a third-party complaint against the

bankrupt entity's insurers. Those insurers now move for summary judgment based on the requirements of Wisconsin's direct liability and direct action statutes.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the mere existence of some factual dispute does not defeat a summary judgment motion; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## UNDISPUTED FACTS AND PROCEDURAL HISTORY

For purposes of the present summary judgment motion, the following facts are undisputed. The majority of proposed findings of fact were admitting by the opposing parties, thus having the same effect as stipulations.[1]

Plaintiffs Alan and Margaret Engebretson are citizens of Wisconsin. Defendant and third-party plaintiff Colorado Cyclist and defendants and third-party defendants Columbia Casualty Company and Royal Insurance Company of America are non-Wisconsin corporations with principal places of business outside Wisconsin. And, the amount in controversy exceeds $75,000. (Third-party Defs.' Proposed Findings of Fact (3DPFOF) ¶ 1.) Therefore, diversity jurisdiction exists.

The events giving rise to the claims in this case occurred in East Troy, Wisconsin (*id.* ¶ 2), which is located in Walworth County, and therefore within the Eastern District of Wisconsin. Thus, venue properly lies in this court. (*Id.*)

The case concerns a bicycle accident on May 5, 2002, which resulted in severe injuries to the plaintiff, Alan Engebretson. (*Id.* ¶ 3; Third-part Pl.'s Proposed Findings of Fact (3PPFOF)[2] ¶ 1.) The bicycle Alan Engebretson was riding had been purchased in July 1999 from Colorado Cyclist, a catalog-based supplier of bicycles and equipment, which is located in Colorado Springs, Colorado. (*Id.* ¶ 2.) The wheel set on the bicycle had been purchased, preassembled, by Colorado Cyclist from a distributor, Riteway Products, in May 1999. (*Id.*

---

[1] Where a proposed finding is undisputed, the court has cited to the proposed finding rather than the underlying evidence. For convenience, the admission by the opposing party is not cited in addition.

[2] Colorado Cyclist filed its own proposed findings of fact on January 15, 2005 (dkt #79), and an amended version on May 10, 2005 (dkt #129), following further discovery permitted by the court. Most of the original proposed findings are repeated in the amended version. The main difference is that several additional findings were added. This cite is to the January 15, 2005 version, to which the moving insurance companies responded.

3

¶ 3.) Colorado Cyclist did not design, manufacture, or assemble the wheel at issue in this litigation. (*Id.* ¶ 4.) Plaintiffs allege that GT Bicycles, Inc. and Riteway Products may have designed, manufactured, distributed, or otherwise placed in the stream of commerce the bicycle rim and wheel assembly, which are claimed to have been defective and which are the subject of this action. (3DPFOF ¶ 4.)

Riteway Products was a division of GT Bicycles, Inc. (3PPFOF ¶ 5.) GT Bicycles was a subsidiary of Schwinn Holdings Corp. (*Id.* ¶ 6.) Schwinn/GT Corp. filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Colorado on July 16, 2001. (*Id.* ¶ 7.) The deadline for filing claims in the bankruptcy court against Schwinn/GT Corp. based on alleged product liability was August 31, 2002. (*Id.* ¶ 10.)

The Engebretsons filed this case in state court on May 1, 2003. (*Id.* ¶ 11; Notice of Removal, Ex. 1.) Colorado Cyclist had no opportunity to file its claim for contribution or indemnification against Riteway or GT prior to the deadline for filing claims in bankruptcy court. (3PPFOF ¶ 12.)

Columbia Casualty Company issued a policy of liability insurance to Schwinn Cycling & Fitness, Inc., and Schwinn Holdings Corporation in the amount of $50,000 per claim, which covered incidents occurring on May 5, 2002. (3DPFOF ¶¶ 5, 6; Carnrite Aff., Ex. A at 2; 3PPFOF ¶ 13.) The Columbia policy had been amended on October 2, 1998, to include GT as an additional insured. (3DPFOF ¶ 7; Carnrite Aff., Ex. A at 23.) The Columbia policy was issued in Illinois and was delivered in Colorado. (3DPFOF ¶¶ 8, 9; Carnrite Aff. ¶¶ 6, 7.)[3] Columbia has not issued or delivered a policy of insurance to GT or Riteway in

---

[3] In its second amended response to the insurers' proposed findings of fact, Colorado Cyclist admits that it has not performed discovery to admit or deny this proposed finding of fact. Therefore, Colorado Cyclist has not sufficiently rebutted the evidence proffered by the insurers indicating issuance in Illinois and delivery in Colorado.

Wisconsin. (3DPFOF ¶ 10; Carnrite Aff. ¶ 8.)[4]  On the policy as issued, Schwinn Cycling & Fitness and Schwinn Holdings had a mailing address in Boulder, Colorado. (Carnrite Aff., Ex. A at 2.)

Royal Insurance Company of America issued a policy of liability insurance to Schwinn Cycling & Fitness, Inc. and Schwinn Holdings Corporation, effective September 19, 1997, in the amount of $5,000,000 per claim, which covered incidents occurring on May 5, 2002.  (3DPFOF ¶¶ 11, 12; Rainone Aff., Ex. A at 1, 2; 3PPFOF ¶ 14; Mullins Aff. filed 5/16/05 (dkt. 134), Ex. A at 5.)  The Royal policy had been amended on October 2, 1998, to include GT as an insured.  (3DPFOF ¶ 13; Rainone Aff., Ex. A at 21.)  The Royal policy, issued from Georgia or North Carolina, was physically delivered to an insurance broker in Chicago, Illinois and then possibly to Colorado. (Rainone Aff., ¶¶ 6-7, Ex. A at 1; Suppl. Knott Aff. filed 5/10/05 (dkt #130), Ex. 3 at 18-20, 40.)  The policy as issued identified Schwinn Cycling & Fitness and Schwinn Holdings as having a mailing address in Boulder, Colorado. (Rainone Aff., Ex. A at 1.)

In the Schwinn/GT Chapter 11 case, the confirmed liquidating plan provided for the creation of a liquidating trust.  (*See* Knott Aff. filed 1/15/05 (dkt #80), Ex. A at 5.)  The parties do not dispute that the liquidating trust is the Baxter Holdings I Corp. Liquidating Trust. Section 7.2 of the liquidating plan provided that:

> Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto (the "Insurance Policies") are treated as executory contracts under the Plan, and the Plan shall constitute a motion to assume the Insurance Policies and, if applicable, to assign same to the Liquidating Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to

---

[4]See the previous footnote.

> sections 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases. . . . To the extent the Bankruptcy court determines otherwise as to any of the Insurance Policies, the Debtors reserve the right to seek rejection of such insurance policy or other available relief. Nothing contained in this Section 7.2 of the Plan shall constitute or be deemed a waiver of any Cause of Action or claim that the Debtors nay [sic] hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.

(Reply Br. in Supp. of Def. Colo. Cyclist's Renewed Rule 7.4 Mot. for Leave to File Amended Third-Party Compl. (dkt. #138), Ex. C at 41-42.)

In the present summary judgment motion, Royal and Columbia argue that the claims against them must be dismissed because, among other reasons, the insured is not a party to this case, and thus no direct action may be maintained against them. At a hearing on April 1, 2005, this court denied Colorado Cyclist's motion to file an amended third-party complaint naming Baxter Holdings I Corp. Liquidating Trust because of the passing of the bar date for product liability claims and the bankruptcy court stay of proceedings against Schwinn/GT and its successors in interest. Colorado Cyclist then obtained a stipulation by the trust as well as a bankruptcy court order allowing the trust to be named as a defendant in this case with certain conditions. The order relieved Colorado Cyclist from the bar date and stated that Colorado Cyclist "shall be treated as possessing a timely filed claim." (*Id.*, Ex. A at 2.) Moreover, the order granted Colorado Cyclist relief from the automatic stay

> as necessary to pursue recovery from any applicable insurance policies owned by the Debtor and the Liquidating Trust. Other than recovering any alleged damages from any applicable insurance policies, CCI shall not be entitled to any recovery from the Liquidating Trust or to share in any distribution made by the Liquidating Trust in this matter.

(*Id.*)

6

Thereafter, this court granted Colorado Cyclist leave to amend its third-party complaint to name the Baxter Holdings I Corp. Liquidating Trust as an additional third-party defendant. In the amended third-party complaint, Colorado Cyclist waives any claim against the Baxter trust beyond the proceeds of its insurance policies. (Am. Third-Party Compl. at 3.)

The Royal and Columbia insurance policies state that "[b]ankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part." (Mullins Aff. filed 5/16/05 (dkt #134), Ex. A at 31, 44; Carnite Aff., Ex. A at 9.) Both policies state that no person or organization has a right "[t]o join us as a party or otherwise bring us into a 'suit' asking for damages from an insured." (Mullins Aff. filed 5/16/05 (dkt #134), Ex. A at 31, 44; Carnrite Aff., Ex. A at 9.) By the policies' terms, an injured person may sue the insurers only following a settlement or final judgment against an insured. (Mullins Aff. filed 5/16/05 (dkt #134), Ex. A at 31, 44; Carnrite Aff., Ex. A at 9.)

Riteway had an affiliate called Riteway Products North Central, Inc., in Sheboygan, Wisconsin. (Suppl. Knott Aff. filed 5/10/05 (dkt. #130), Ex. 3 at 42.) That affiliate merged into a Missouri corporation in December 1999. (Knott Aff. filed 1/15/05 (dkt #82), Ex. E.) As of July 1999, Riteway and Schwinn had at least thirteen divisions other than Riteway Products North Central, in six states and two foreign countries. (*See* Suppl. Mullins Aff. filed 5/20/05 (dkt. #147), Ex. B at 2.) The endorsements to the policies that added GT covered the Riteway operations in Wisconsin. (*See* Suppl. Knott Aff. filed 5/10/05 (dkt. #130), Ex. 3 at 35-36.)

DISCUSSION

In this diversity case, state law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties both argue Wisconsin substantive law, and no other state's law appears more appropriate. As a result, this court will apply Wisconsin law.

The court must apply the substantive law as declared by Wisconsin's legislature or highest court. *Id.* at 78-79; *Home Valu, Inc. v. Pep Boys – Manny, Moe and Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000). If Wisconsin law is unclear because the Supreme Court of Wisconsin has not spoken on the issue, this court must predict how that court would decide the question today. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); *Rodman Indus., Inc. v. G & S Mill, Inc.*, 145 F.3d 940, 942 (7th Cir. 1998). If the Supreme Court of Wisconsin has not spoken on the issue, state intermediate appellate court decisions are authoritative unless there is a split among those courts or "unless there is a compelling reason to doubt that the courts have got the law right." *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995), *quoted in Home Value, Inc.*, 213 F.3d at 963. Always, the question is how this court thinks the Supreme Court of Wisconsin would rule. *Home Valu, Inc.*, 213 F.3d at 963-64. However, federal courts sitting in diversity should hesitate to expand state law in the absence of any indication of intent by the state courts or legislature. *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997). When faced with two equally plausible interpretations of state law, the federal court should generally choose the narrower interpretation that restricts liability, rather than an expansive interpretation that creates substantially more liability. *Home Value, Inc.*, 213 F.3d at 963.

Generally, Wisconsin statutory law preempts "no action" language contained in insurance policies such as Royal's and Columbia's, which prevent suit by an insured until after settlement or final judgment, provided the requirements of the applicable statutes are met. At least two statutes must be read together regarding direct actions against insurers. *Frye v. Angst*, 28 Wis. 2d 575, 579 (1965) (discussing predecessor statutes of Wis. Stat. §§ 632.24, 803.04); *accord Barter v. Gen. Motors Corp.*, 70 Wis. 2d 796, 801-02 (1975). Wisconsin Statute § 803.04(2)(a) provides the procedural basis for joinder of the insurer:

8

> In any action for damages caused by negligence, any insurer which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, or which by its policy of insurance assumes or reserves the right to control the prosecution, defense or settlement of the claim or action, or which by its policy agrees to prosecute or defend the action brought by plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action or agrees to pay the costs of such litigation, is by this section made a proper party defendant in any action brought by plaintiff in this state on account of any claim against the insured. If the policy of insurance was issued or delivered outside this state, the insurer is by this paragraph made a proper party defendant only if the accident, injury or negligence occurred in this state.

If its requirements are met, § 803.04(2)(a) trumps any "no action" clause in an insurance policy. *See Bielke v. Iowa Nat'l Mut. Ins. Co.*, 451 F. Supp. 376 (E.D. Wis. 1978) (Reynolds, J.); *see also Townsend v. Wis. Desert Horse Ass'n*, 42 Wis. 2d 414, 425 (1969) ("In cases falling outside the scope of [the predecessor to § 803.04(2)(a)], a 'no action' clause is valid and is a bar to a suit by a third party before liability is established.")

Wisconsin Statute § 632.24 provides the substantive basis underlying direct liability:

> Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

Thus, according to the Supreme Court of Wisconsin when discussing the predecessors to these statutes, what is now § 632.24 provides for direct *liability* of the insurer to an injured party, while § 803.04 is the procedural statute that allows direct *action* against the insurer despite a "no action" clause. *Frye*, 28 Wis. 2d at 579; *accord Barter*, 70 Wis. 2d at 801-02. To maintain a direct liability action, a plaintiff must meet the requirements of both the

9

Case 2:03-cv-00553-CNC    Filed 06/20/05    Page 9 of 17    Document 170

substantive and procedural statutes. *Decade's Monthly Income & Appreciation Fund v. Whyte & Hirschboeck, S.C.*, 173 Wis. 2d 665, 678 (1993).

Also coming into play is a third statute. Wisconsin Statute § 631.01(1) states that chapter 632 (and therefore § 632.24) applies "to all insurance policies and group certificates delivered or issued for delivery in this state, on property ordinarily located in this state, on persons residing in this state when the policy or group certificate is issued, or on business operations in this state, except," for business operations only, where an insurance contract is negotiated out of state and the operations in the state are incidental or subordinate to operations outside the state unless the policy covers warranty. Shortly after the passage of § 631.01(1), then-Chief Judge John W. Reynolds found that the statute limited the application of § 632.24 to insurance policies delivered or issued in Wisconsin. *Bielke v. Iowa Nat'l Mut. Ins. Co.*, 451 F. Supp. 376, 378 (E.D. Wis. 1978).

Importantly, in 1998, a panel of the Wisconsin Court of Appeals also found that the plain language of § 631.01(1) limits § 632.24 to policies issued or delivered in Wisconsin. *Kenison v. Wellington Ins. Co.*, 218 Wis. 2d 700, 710 (Ct. App. 1998). Notably, the Wisconsin appellate court disregarded *Frye*, *Barter*, and *Bowman v. Rural Mutual Insurance Co.*, 53 Wis. 2d 260 (1971), on which Colorado Cyclist relies, to the extent that those cases were decided prior to enactment of § 631.01(1) and, therefore, did not address that statute's restrictions. *Id.* at 709. However, the court stated that its decision

> does not leave injured parties without avenues of redress against insurance companies, as Kenison suggests. If the accident, injury or negligence occurs in Wisconsin, and the insurance policy was issued or delivered outside Wisconsin, although a plaintiff may not pursue the insurer directly because of the § 631.01(1), Stats., limitation, he or she may *join* the insurer as a proper party defendant provided the insured is also a party.

10

Case 2:03-cv-00553-CNC   Filed 06/20/05   Page 10 of 17   Document 170

*Id.* at 710. The court held that because the insurance policy in *Kenison* was not delivered or issued in Wisconsin and the insureds were not served timely and not parties to the case, Kenison was unable to maintain a direct action against the insurer. *Id.* at 711.

Based on *Kenison*, the Seventh Circuit has stated that "Wisconsin permits a direct action regardless of whether the insured is a party, but only if the insurance policy was issued or delivered in Wisconsin." The court then added that "[o]therwise the direct action can be maintained only if and so long as the insureds remain parties." *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 532 (7th Cir. 2002). Because, in *Wild*, claims against the insureds had been properly dismissed, "out with them went their two insurers," as neither policy was issued nor delivered in Wisconsin. *Id.*

Colorado Cyclist argues that the decisions of the Wisconsin Supreme Court in *Bowman* and *Barter* trump *Kenison*. In *Bowman,* the Wisconsin Supreme Court stated that a direct action could be maintained against the insurer alone, even if the insured was not served and did not appear in the case, and allowed a case to proceed against an insurer when the insured's whereabouts were unknown. As the court did not discuss the predecessor of § 632.24, it appears that the court was discussing only the procedural direct action as opposed to direct liability. *See* 53 Wis. 2d at 264. However, the policy had been issued and delivered in Wisconsin. Therefore, the case is not squarely applicable to the present situation. *Id.* at 264 & nn. 2, 4. In *Barter*, the Wisconsin Supreme Court permitted a direct action against an insurer even though the insured was not a defendant and the policy was issued and delivered in Minnesota. 70 Wis. 2d at 798-99. The issue of the insured not being sued was not addressed specifically. *See id.* at 798-806. More importantly, as indicated by the *Kenison* court, *Barter*, like *Bowman*, preceded the passage of § 631.01(1), which is central to the issue before the court and limits the application of § 632.24. *Wild*, which this

11

court must follow, similarly recognizes the application of § 631.01(1) to § 632.24. *See* 292 F.3d at 532.

Colorado Cyclist also argues that *Kenison* is distinguishable because the case did not involve a bankrupt insured, but an insured who had not been timely served. Regardless, this court does not find the distinction meaningful.

Thus, to summarize, an injured party may sue an insurer for direct *liability* under § 632.24 only if the requirements of § 631.01(1) are met. However, even if the requirements of § 631.01(1) are not met, the injured party may join the insurer as a defendant under § 803.04(2)(a) if the requirements of that statute are fulfilled. In the latter case, the injured party's claim is not one of direct liability, but rather derivative of that against the insured. *See Kenison*, 218 Wis. 2d at 710; 3 Jay E. Grenig, *Wisconsin Practice Series* § 304.3, at 437 (3d ed. 2003) ("An insurer's liability under Subsection (2) is derivative and the insurer is not liable unless the insured is liable."). Hence, the insured must be a party as well. *Wild*, 292 F.3d at 532; *Kenison*, 218 Wis. 2d at 710.

Regarding substantive, direct liability, this court does not believe that the Supreme Court of Wisconsin would, as the *Kenison, Wild*, and *Bielke* courts did, read out of § 631.01(1) the other three clauses expanding the scope of chapter 632 beyond merely insurance policies issued or delivered in Wisconsin. By its terms, § 631.01(1) applies chapter 632 to all insurance policies (1) delivered or issued for delivery in Wisconsin, (2) on property ordinarily located in Wisconsin, (3) on persons residing in Wisconsin when the policy issued, *or* (4) on business operations in Wisconsin, except when an insurance contract is negotiated out of state and the operations in Wisconsin are incidental or subordinate to operations outside Wisconsin, unless the policy concerns warranty. While the *Wild* decision is binding

precedent and *Kenison* is a statement by the Wisconsin Court of Appeals, the statute must be followed.

Colorado Cyclist maintains that the fourth clause applies in this case because Riteway Products North Central, Inc., a Riteway affiliate had operations in Sheboygan, Wisconsin. Its argument is unavailing. In response to the summary judgment motion, Colorado Cyclist presents insufficient evidence that the Riteway North Central's business operations in Wisconsin were other than incidental or subordinate to operations outside Wisconsin. The filing of Schwinn/GT's Chapter 11 in the District of Colorado and the designation in the insurance policy of Boulder, Colorado, as the insured's main address indicate that the business operations of the parent entities in Colorado were substantial. That Schwinn and Riteway have identified thirteen other company divisions also indicates that at most, the Wisconsin entity, Riteway Products North Central, Inc., was a minor part of the operations covered by the policies. Finally, that this Wisconsin division was eliminated in 1999 further supports the conclusion indicates that it was incidental to other operations of its parent companies.

Similarly, the third clause, argued briefly by Colorado Cyclist does not apply. At the time of Alan Engebretson's accident Riteway had no business operations in Sheboygan, and its insurance policies did not cover any of its property ordinarily located in Wisconsin. Further, Riteway's policies do not provide property damage coverage for property owned by the insured. (Mullins Aff. filed 5/16/05, Ex. A at 28, 43.)

The only other clause of § 631.01(1) argued by Colorado Cyclist is the first clause, applying chapter 632 to policies issued or delivered in Wisconsin. Colorado Cyclist has failed to rebut the insurers' evidence that the Columbia policy was neither issued nor delivered in Wisconsin. As for the Royal policy, Colorado Cyclist contends that because the

13

policy was physically delivered to a broker in Illinois, and because when the policies were amended to include GT and its subsidiaries, including Riteway Products North Central, Inc., which was located in Wisconsin, the Royal policy was constructively delivered in Wisconsin. However, Colorado Cyclist's argument turns the concept of delivery on its head. The statute references the state or location of delivery, and the plain meaning is physical delivery – otherwise a policy could be constructively delivered across the country. Even if a policy is constructively delivered when the insurer gives it to the broker with respect to GT, such constructive delivery would have occurred in Illinois. Further, at the time the policy was delivered to the broker, Schwinn did not own GT or Riteway. Thus, the entity in Wisconsin could not have constructively received the policy on the delivery date. And at the time the Wisconsin Riteway entity was added to the policy, the policy had already been delivered. Thus, Colorado Cyclist cannot meet the express terms of § 631.01(1) and cannot bring a direct liability claim under § 632.24.

In renumbering what is now § 632.24, the Wisconsin legislature stated in an introductory note that the section was intended to preserve the existing state of the law, although "a case can be made for much broader application." 1975 Wis. Laws 375, § 42, subch. III, intro. note. While it appears that § 631.01(1) concurrently narrowed the application of § 632.24, this court applies the law as the legislature has enacted it. The wisdom of the limitation is for the state legislature to ascertain. *See Lexington Ins. Co.*, 165 F.3d at 1093. Since *Kenison* and *Wild*, the Wisconsin legislature has not amended the statutes to exempt § 632.24 from the limitations of § 631.01(1), suggesting that *Kenison* is a correct interpretation. Further, following *Kenison* comports with this court's role in determining state law narrowly rather than expansively.

14

Nevertheless, the *Kenison* court recognized that when a policy is issued outside of Wisconsin, "although a plaintiff may not pursue the insurer directly because of [§ 631.01(1)], he or she may *join* the insurer as a proper party defendant provided the insured is also a party." 218 Wis. 2d at 710. A recent decision from Judge Barbara B. Crabb in the Western District is right on point. *Bluell v. All Am. Homes, Inc.*, No. 01-C-0538-C, 2002 WL 32349388 (W.D. Wis. May 29, 2002). Both an insured and its insurer were sued regarding personal injuries of the plaintiff, and the insurer moved to dismiss under the direct liability and direct action statutes. The insurer argued that the plaintiff had to satisfy the requirements of both § 632.24, as limited by § 631.01(1), and § 803.04(2)(a). The requirements of § 803.04(2)(a) were met because the accident had occurred in Wisconsin. Judge Crabb found that under Wisconsin law "there are two possible theories of recovery against defendant Westchester: direct action against the insurer under Wis. Stat. § 632.24 or permissive joinder under Wis. Stat. § 803.04(2)(a)." *Id.* at *2. She held that even though the policy was not delivered or issued in Wisconsin, the plaintiff could nevertheless maintain a cause of action against the insurer under the permissive joinder statute. *Id.* at *2-*3 (citing *Kenison*).

In the present case, the requirements of Wis. Stat. § 803.04(2)(a) are satisfied. Regardless where the insurance policy was issued or delivered, the bicycle accident which gave rise to this case occurred in Wisconsin. Thus, although Colorado Cyclist may not have direct liability claim against the insurers under § 632.24, it nevertheless can sue the insurers provided that the insured is sued as well.

The insurers argue that the "insured" (as used in the statutes and case law) has not been, and cannot be, sued -, i.e., that the Baxter trust is not the "insured." This literalist argument is unpersuasive. Insurance polices providing coverage for a debtor's liability are generally property of the debtor's estate. *In re Shondel*, 950 F.2d 1301, 1305 (7th Cir. 1991).

15

The "fresh-start" policy behind a bankruptcy proceeding "'is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured.'" *Id.* at 1308 (quoting *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 975 (11th Cir. 1989)). Section 7.2 of Schwinn/GT Corporation's liquidating Chapter 11 plan created an assignment and assumption of the Royal and Columbia insurance policies by the Baxter trust. *See also* 11 U.S.C. §§ 365(a), 1123(b)(2). According to the Amended Disclosure Statement for Plan of Liquidation, dated November 4, 2002, "[t]he Liquidating Trust shall be the representative of the Debtors' Estates pursuant to § 1123 of the Bankruptcy Code and shall have all of the rights, powers and standing of a debtor in possession under § 1107" (Knott Aff. filed 1/15/05 (dkt. 81), Ex. A at 22), and the plan included steps for binding arbitration of product liability claims involving the product liability claimant, the liquidating trustee, and applicable insurance companies (*id.* at 29). The trust, through the bankruptcy court proceedings, thus became the "insured" under those policies.

Further, the insurers' own policies state that "[b]ankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part." (Mullins Aff. of 5/16/05 (dkt #134), Ex. A at 31, 44; Carnrite Aff., Ex. A at 9.) A fair reading of this contract language covers not only the fact of bankruptcy, but also related proceedings in a bankruptcy court, including a Chapter 11 liquidation plan and a liquidating trust promulgated pursuant to a confirmed Chapter 11 plan.[5] Finally, not treating the Baxter trust as the insured in this case would conflict with Wisconsin public policy. *See* Wis. Stat. § 632.22 ("Every liability insurance policy shall provide that the bankruptcy or insolvency of the insured shall not diminish any liability of the insurer to 3rd parties and that if execution

---

[5]The policies also define an "insured" as including an "organization." (Mullins Aff. filed 5/16/05 (dkt #134), Ex. A at 30, 42.) The trust appears to qualify as an organization.

16

against the insured is returned unsatisfied, an action may be maintained against the insurer to the extent that the liability is covered by the policy.");1975 Wis. Laws 375, § 42, subch. III, intro. note ("The view is now dominant that the liability policy is intended to protect the third party claimant too, by providing him a solvent source of recovery.").

Now that the trust, i.e., the insured, is in the case, the insurers can be sued under Wis. Stat. § 803.04(2)(a). Therefore,

IT IS ORDERED that the insurers' motion for summary judgment is granted as to direct liability under § 632.24, but denied as to derivative liability and joinder under § 803.04(2)(a) in the third-party proceedings.

Because the Baxter trust has been added only as a third-party defendant and the bankruptcy court has not relieved the Engebretsons from the effects of the bar date and bankruptcy court's stay of proceedings to recover prepetition debts from Schwinn/GT,

IT IS ORDERED that the insurers' motion for summary judgment is granted as to the Engebretsons' claims.

Dated at Milwaukee, Wisconsin, this 20th day of June, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge