UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

ALAN B. ENGEBRETSON,
MARGARET ANN ENGEBRETSON,

        Plaintiffs,

    v.                                    Case No. 03-C-0553

HUMANA INSURANCE COMPANY,

        Nominal Defendant,

      and

THE COLORADO CYCLIST, INC.,

        Defendant and Third-Party
        Plaintiff,

    v.

COLUMBIA CASUALTY COMPANY,
ROYAL INSURANCE COMPANY OF AMERICA,
ABC INSURANCE COMPANY,
DEF INSURANCE COMPANY, and
BAXTER HOLDINGS I CORP. LIQUIDATING TRUST,

        Third-Party Defendants.

---

DECISION AND ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT
AND DEFAULT JUDGMENT

        Before the court is a second motion for summary judgment filed by third-party

defendants Columbia Casualty Company and Royal Insurance Company of America,

challenging the third-party claims of The Colorado Cyclist, Inc.  In an order dated June 20,

2005, the court granted the insurers' previous summary judgment motion regarding the claims

of plaintiffs Alan and Margaret Engebretson.  Further, the court granted summary judgment

in the insurers' favor as to any third-party claim by The Colorado Cyclist, Inc., for direct liability under Wis. Stat. § 632.24. However, the insurers' motion for summary judgment regarding Colorado Cyclist's third-party claim of derivative liability and joinder under Wis. Stat. § 803.04(2)(a) was denied. The court found that the Baxter Holdings I Corp. Liquidating Trust (the "Baxter trust") was considered to be the insured and because "the [Baxter] trust, i.e., the insured, is in the case, the insurers can be sued under Wis. Stat. § 803.04(2)(a)." (Decision & Order of 6/20/05 at 17.)

The reader's familiarity with the issues in the June 20, 2005, order is assumed, and the court will not now repeat that order's recitation of undisputed facts or procedural history and its discussion of §§ 632.24 and 803.04.

The primary question for the present summary judgment motion is: What happens to the direct action claim under § 803.04(2)(a) when the insured, properly joined in the case, ceases to exist? According to the insurers, the result is dismissal of any direct action claim. The insurers have also moved for default judgment against the Baxter trust as well as summary judgment based on certain policy provisions.

The court notes that the insurers present contradictory motions. They argue against Colorado Cyclist that the Baxter trust, after its termination date, no longer exists, and that no insured remains in the case as required by § 803.04. On the other hand, they argue that the Baxter trust was served with a cross-claim after its termination date and failed to answer. Regardless, at the center of the motions is the status of the Baxter trust.

MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

2

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the mere existence of a factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A.      Undisputed Facts

The court incorporates the undisputed facts and procedural history set forth in its June 20, 2005, Decision and Order. Further, it is undisputed that when Colorado Cyclist filed its amended third-party complaint on May 20, 2005, the Baxter trust was viable. Counsel for the Baxter trust, Lawrence Bass, accepted service of the amended third-party complaint on May 23, 2005, in Denver, Colorado. (Knott Aff. filed 10/21/05, Ex. 5.)

3

On May 31, 2005, United States Bankruptcy Judge Sidney B. Brooks of the United States Bankruptcy Court in the District of Colorado issued a Final Decree in the Schwinn/GT Corp. Chapter 11 case, stating that "[t]he Liquidating Trust of the above consolidated debtors having been fully administered, it is hereby ORDERED that the chapter 11 cases of the above-named debtors are hereby closed." (Knott Aff. filed 10/21/05, Ex. 6.) On June 22, 2005, the clerk of the Colorado bankruptcy court accepted the report of the trustee in the Schwinn/GT Corp. case, discharged the trustee, and closed the case. (Knott Aff. filed 10/21/05, Ex. 7.)

Meanwhile, in this case, on June 10, 2005, the insurers answered the amended third-party complaint, cross-claimed against the Baxter trust, and filed a counter-claim against Colorado Cyclist. (Doc. # 157.) On June 13, 2005, the Baxter trust answered the amended third-party complaint. (Doc. # 162.) Colorado Cyclist answered the insurers' counter-claim on June 20, 2005. (Doc. # 166.) The same day, the Baxter trust moved to adjourn the trial date and suspend the scheduling order in the case. (Doc. # 167.)

On August 2, 2005, the insurers served Lawrence Bass in Denver, Colorado, with their cross-claim. (Mullins Aff. filed 9/22/05, Ex. A.) To date, the Baxter trust has not answered the cross-claim.

At a court hearing held November 17, 2005, attorney Jay Starrett appeared for the Baxter trust and told the court he wanted to conduct discovery regarding the pending motion for summary judgment. (Mins. of 11/17/05 Hr'g.)

The Liquidating Plan in the Schwinn/GT bankruptcy case provided that the liquidating trust, i.e., the Baxter trust, "shall terminate on the date that a Final Decree is entered in the Chapter 11 Case and when all assets in the Trust Estate have been distributed and Claims pursued or abandoned pursuant to and in accordance with the Plan and the

4

Liquidating Trust Agreement." (Supplemental Knott Aff. filed 11/1/05, Ex. 9 at 22.[1]) Further, it stated that "[t]he Liquidating Trustee of the Liquidating Trust shall be discharged from his or her obligations under the Plan or the Liquidating Trust Agreement at such time as the Liquidating Trust has terminated pursuant to its terms." (*Id.* at 31.) The liquidating trustee had to distribute all remaining available assets before filing a final report. (*Id.*)

Similarly, the Liquidating Trust Agreement for the Schwinn/GT bankruptcy case stated that the Liquidating Trust, i.e., the Baxter trust, "shall terminate on such date when a Final Decree has been entered in the Chapter 11 Cases and when all assets in the Trust Estate have been distributed and claims pursued or abandoned pursuant to and in accordance with the Plan and the Liquidating Trust Agreement." (Supplemental Knott Aff. filed 11/1/05, Ex. 10 at 14.) Also, the Liquidating Trust Agreement noted that the trustee would be discharged once the Baxter trust had terminated. (*Id.*)

The Royal and Columbia Casualty insurance policies contain the following "Cooperation Clause" under section IV, paragraph 2, "Duties in The Event of Occurrence, Claim Or Suit":

> c.     You and any other involved insured must:
>
>        . . .
>
>        (3)     Cooperate with us in the investigation or settlement
>                of the claim or defense against the "suit" . . . .
>
> d.     No insured will, except at that insured's own cost,
>        voluntarily make a payment, assume any obligation, or

---

[1]The copies of the proposed plan and Liquidating Trust Agreement attached to Knott's supplemental affidavit are unsigned and undated and do not indicate when, if ever, they were filed in the bankruptcy court. However, the parties here do not dispute that these are the actual documents from the bankruptcy case. Further, a review of the docket from the bankruptcy case indicates that the proposed plan was filed November 5, 2002, *In re Schwinn/GT Corp.*, No. 01-20292-SBB, doc. #1521; the Liquidating Trust Agreement was filed December 27, 2002, *id.*, doc. #1637, and that even though those documents were unsigned as filed, the bankruptcy court confirmed the plan and approved the Liquidating Trust Agreement in an order of March 13, 2003, *In re Schwinn/GT Corp.*, No. 01-20292-SBB, slip op. at 9 (Bankr. D. Colo. filed 3/13/03).

5

incur any expense, other than for first aid, without our consent.

(Mullins Aff. filed 5/16/05 (dkt #134), Ex. A at 31, 44.[2]) Further, they state in an "Exclusions" paragraph, which the court will refer to as the "Contractual Liability Exclusion," that the insurance policy does not apply to bodily injury or property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (*Id.* at 27, 41.)

B.      Status of the Baxter Trust

The court finds that a question of fact exists as to the legal status of the Baxter trust.

The Liquidating Trust Agreement and the confirmed plan in bankruptcy court, together with the Final Decree and the clerk's order discharging the trustee and closing the bankruptcy case, indicate that the Baxter trust ceased to exist on May 31, 2005, or, at the latest, on June 22, 2005. According to the plan and the Liquidating Trust Agreement, the Baxter trust was to terminate on the date that a Final Decree was entered *and* when all assets in the trust estate had been distributed and claims of the trust were either pursued or abandoned. (Knott Suppl. Aff. filed 11/1/05, Ex. A at 22.) It is unclear whether all assets of the trust estate have been distributed. However, it appears that all assets were distributed inasmuch as the liquidating trustee was required to distribute all available assets before filing a final report (*id.* at 31), and a final report was filed in the bankruptcy court on April 26, 2005. *In re Schwinn/GT Corp.*, Chapter 11 Final Report & Motion for Final Decree (Docket # 3016) (Bankr. D. Colo. filed Apr. 26, 2005). Further, the plan provided that the liquidating trustee

_____

[2]The quoted language is from the Royal policy. The Columbia policy wording is slightly different, without any difference in meaning.

would be discharged from his obligations "at such time as the Liquidating Trust has terminated." (Knott Suppl. Aff. filed 11/1/05, Ex. A at 31.) Because the liquidating trustee was discharged by the bankruptcy court clerk on June 22, 2005 (Mullins Aff. filed 9/22/05, Ex. B, Attach. 2), there is satisfactory proof that the Baxter trust has terminated.

The Baxter trust's June 20, 2005, answer and motion to suspend scheduling order suggests that the trust did not terminate on May 31, 2005. Additionally, the appearance of counsel for the trust on November 17, 2005, provides another reason to believe that the Baxter trust did not terminate on June 22, 2005. At the November 17, 2005 hearing, Attorney Jay Starrett appeared on behalf of the Baxter trust. When questioned by the court regarding whom he represents, he vaguely referenced the insurance behind the Baxter trust, i.e., the insurance policy that holds Royal and Columbia in the case. An insurance policy is not a client, and the insurer behind the policy is a separate party in this case. Nor can counsel for the insurers be Starrett's client. These facts *suggest* that the Baxter trust may not exist, but the court just cannot tell. Also, Royal and Columbia present no evidence regarding the person or entity to whom Starrett speaks concerning his engagement as counsel.

The insurers present a letter from the Baxter trust's bankruptcy attorneys stating that the Baxter trust no longer has any legal existence and that attorneys in this case should stop contacting them. But the letter's contents are hearsay and cannot be used as evidence. (The attorneys cannot be agents of a party-opponent if they are disclaiming that they represent the party-opponent.) Therefore, at the summary judgment stage, the court cannot say that Starrett has no client and must assume that Starrett is conferring with someone who speaks on behalf of the Baxter trust.

Colorado Cyclist argues that, in any event, trusts remain in existence until they wind up their affairs, citing Bogert et al., *The Law of Trusts and Trustees* § 1010, at 448 (Rev.

7

2d ed. 2004).  The insurers cite *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999), for their position that no wind-up period exists for a Chapter 11 liquidating trust beyond the termination date set forth in the trust documents.  The theory is that the liquidating trust is not a typical trust, and that its entire purpose is winding-up; thus, depending on the language of the Chapter 11 plan, its existence would not be extended by a winding-up period.

This court finds the Fifth Circuit's discussion persuasive, but does not need to determine whether the Baxter trust had a winding-up period.  Regardless of whether the winding-up rule applies to a liquidating trust, Colorado Cyclist provides no evidence of any affairs the Baxter trust in particular had to wind up past May 31 or June 22, 2005.  The present case cannot constitute remaining business for the Baxter trust, as the claim Colorado Cyclist filed against the trust disclaims any recovery against the trust itself.  In the face of the insurers' argument that the Baxter trust has terminated, Colorado Cyclist had to respond with not only the theory of winding-up, but also evidence that there was something to wind up.

The insurers cite *Goldin* for the additional proposition that following the termination date of a Chapter 11 liquidating trust, the trustee can neither prosecute nor defend any claims, and that Colorado Cyclist's claims against the Baxter trust must be dismissed because the trust lacks the legal capacity to participate in this action.  (Reply Br. in Supp. at 2 (citing *Goldin*, 166 F.3d at 715, 719, 721).)  But, *Goldin* is not binding precedent and its holding does not extend as far as the insurers suggest.  The *Goldin* court found that the liquidating trust's claims against the defendant officers and directors of the Chpater 11 debtor in that case had to be "dismissed as moot for want of a party plaintiff having a legally cognizable interest in the outcome."  166 F.3d at 719.  However, the court found that the effect that termination of the liquidating trust had on the officers' counter-claims against the liquidating trust "more difficult to resolve."  *Id.*  According to the Fifth Circuit,

8

> courts have recognized that the standing inquiry is fundamentally different in the rare case where the defendant is its focus. . . . The trust's termination and Goldin's lack of standing thus arguably may not have automatically terminated the district court's jurisdiction of the claims against the trust, as it did Goldin's claims against appellees.

*Id.* at 719-20. Claims against the trust that had resulted in an award of severance benefits to the officers were not vacated merely because the trust no longer existed. Instead, the claims against the trust were vacated because the trust's nonexistence denied the trust a meaningful appeal, through no fault of the trust, but the fault of the debtor's officers instead. *Id.* at 720-21.

The officers of the Chapter 11 debtor argued on appeal that the trust had terminated, "oblivious to the necessary effect this contention had on the propriety of continuing their litigation solely against the defunct trust." *Id.* at 721. The Fifth Circuit suggested in light of the unique facts of the case that there may have been a successor to the trust, which the officers should have pursued in lieu of the trust; they could have substituted the trust assets or another proper successor to the trust as a defendant to their claim for severance benefits. *Id.* Thus, after a close reading of *Goldin*, this court is unconvinced that, even if the Baxter trust has terminated, the claims of Colorado Cyclist against the trust must be dismissed. The bankruptcy court which confirmed the plan that created the trust allowed the trust to be named a defendant in this case; relieved Colorado Cyclist for the claims bar date in the Chapter 11; and determined that Colorado Cyclist had a timely filed claim in the Schwinn/GT Chapter 11. As noted in this court's June 20, 2005, decision and order (Doc. # 170), the bankruptcy court's order and the Chapter 11 plan contemplated legal actions against the Chapter 11 debtor's insurers that would survive consummation of the plan as well as dissolution of the trust.

9

Lastly, the Baxter trust appeared in this case by counsel following the trust's termination date. Although it appears very likely, based on the bankruptcy court decree and order closing the Chapter 11 case, that the Baxter trust dissolved June 22, 2005, this summary judgment record does not permit that finding. In other words, because the insurers have not established, without dispute, that the Baxter trust no longer exists in some form, their summary judgment motion must be denied.

C.    Direct Action Against Insurers

For purposes of resolving this issue so that the case may move forward, the court will also construe the facts in the insurers' favor, assume that the Baxter trust no longer exists and proceed as though Colorado Cyclist's claims against the Baxter trust terminated along with the trust itself. That being so, the insurers' motion still must be denied, and summary judgment will be granted in Colorado Cyclist's favor.

As set forth in the court's June 20, 2005 order, Wisconsin law applies to the issue of whether a direct action may be maintained against the insurers. This court must apply substantive law as declared by Wisconsin's legislature or highest court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Home Valu, Inc. v. Pep Boys – Manny, Moe and Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000). If Wisconsin law is unclear because the Supreme Court of Wisconsin has not spoken on the issue, this court must predict how that court would decide the question today. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); *Rodman Indus., Inc. v. G & S Mill, Inc.*, 145 F.3d 940, 942 (7th Cir. 1998).

To construe a Wisconsin statute, the court begins with the plain language of the statute and gives it its common, ordinary, and accepted meaning. *Burbank Grease Servs.,*

*LLC v. Sokolowski*, 2006 WI 103, ¶ 14, 717 N.W.2d 781, ¶ 14. The court takes into consideration the context in which the language is used, and its scope, history and purpose if ascertainable from the text and structure of the statute itself. *Id.* The statute is interpreted reasonably, to avoid absurd or unreasonable results. *In re Commitment of Combs*, 2006 WI App 137, ¶ 22, ___ N.W.2d ___, ¶ 22. If the statutory language has a plain meaning, it is applied according to that plain meaning. *Id.* If the statute is ambiguous, the court may consider extrinsic sources such as legislative history. *Burbank Grease Servs.*, 2006 WI 103, ¶ 14.

Wisconsin Statute § 803.04(2)(a) provides:

> In any action for damages caused by negligence, any insurer which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, or which by its policy of insurance assumes or reserves the right to control the prosecution, defense or settlement of the claim or action, or which by its policy agrees to prosecute or defend the action brought by plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action or agrees to pay the costs of such litigation, is by this section made a proper party defendant in any action brought by plaintiff in this state on account of any claim against the insured. If the policy of insurance was issued or delivered outside this state, the insurer is by this paragraph made a proper party defendant only if the accident, injury or negligence occurred in this state.

This court's June 20, 2005, order discussed how Wis. Stat. § 803.04(2)(a) overrode the "no action" clauses in the insurance polices, how the insurers could be sued under § 803.04(2)(a) if the insured was in the case, and how the Baxter trust was considered the insured in the present case. Now, the court finds, as a matter of law, that because the Baxter trust was joined as a party in this case prior to its possible dissolution, the insurers may continue to be sued under the direct action statute notwithstanding the Baxter trust's current status.

11

Section 803.04(2)(a) does not address the situation where the insured is an entity that loses its legal status. However, the subsection states that an insurer is "made a proper party defendant in any action *brought* by plaintiff in this state *on account of any claim against the insured.*" § 803.04(2)(a) (emphasis added). The words "on account of any claim against the insured" suggest the need for a valid claim against the insured, and the word "brought" suggests the focus, for determining whether a valid claim is made, is the time when suit against the insured is filed.

In *Wild v. Subscription Plus, Inc.*, the Seventh Circuit discussed briefly Wisconsin's direct action statute, noting that

> Wisconsin permits a direct action regardless of whether the insured is a party, but only if the insurance policy was issued or delivered in Wisconsin, which neither of these policies was. Otherwise the direct action can be maintained only if and so long as the insured remain parties. Both Subscription Plus and Hillery were properly dismissed, and out with them went their two insurers.

292 F.3d 526, 532 (7th Cir. 2002) (citations omitted). Previously, the district court had dismissed claims against defendant Hillery because she could not be served under Wisconsin's long-arm statute. *Id.* at 530. Subscription Plus was then dismissed because the alleged negligence underlying the Wilds' suit was that of an independent contractor of Subscription Plus and could not be imputed to Subscription Plus. *Id.* at 532.

In *Kenison v. Wellington Insurance Co.*, the Wisconsin Court of Appeals stated that if an accident, injury or negligence occurred in Wisconsin, the plaintiff "may *join* the insurer as a proper party defendant provided the insured is also a party." 218 Wis. 2d 700, 710 (Ct. App. 1998). Kenison had filed a complaint against two insureds and the insurer, but only the insurer was timely served, so the claims against the insureds were dismissed with prejudice. *Id.* at 703, 711. Because the insureds were not timely served "and therefore are

12

not parties to the case," the court concluded that Kenison could not maintain a direct action against Wellington under § 803.04(2)(a). *Id.* at 711. Similarly, United States District Judge Barbara B. Crabb dismissed a direct action claim against an insurer where the claim against the insured was dismissed for lack of personal jurisdiction. *Barnes v. Black*, No. 03-C-703-C, 2004 WL 1253294 (W.D. Wis. June 4, 2004).

*Wild*, *Kenison*, and *Barnes* are distinguishable from the present case. In *Wild* and *Kenison*, claims against the insured were dismissed for failure to state a claim or failure of service. In *Barnes*, the court lacked personal jurisdiction over the insured. Thus, in these cases, the claims against the insureds were pursued improperly. Here, a sufficient claim against the Baxter trust was made in the amended third-party complaint. Claims against the Baxter trust were never dismissed as a matter of law, for failure of service, for failure to state a claim, for lack of personal jurisdiction, or for any other failure on the part of plaintiff. Instead, if the claims must be dismissed at all dismissal would be based on a matter of pure happenstance as far as the insurers are concerned.

In *Wiechmann v. Huber*, 211 Wis. 333, 248 N.W. 112 (1933), the Supreme Court of Wisconsin addressed whether the abatement of a cause of action against an insured eliminated the cause of action against the insurer as well. Wiechmann's husband died in an automobile accident while riding with Huber, who died shortly after the collision. Later, Wiechmann sued Huber's estate for wrongful death and Huber's insurance carrier under the statutes that are now §§ 632.24 and 803.04(2)(a). The parties conceded that the wrongful death action against Huber abated with Huber's own death, and there could never be any recovery against Huber or his estate. 248 N.W. at 112, 113.

13

The court found it "quite impossible to read into the statutes an intent to create a liability on the part of the insurance carrier completely dissociated from the liability of the insured." *Id.* at 113. However, the court noted the difference between the situation in *Wiechmann* and one involving bankruptcy:

> The Legislature has imposed limitations upon the right of insurance carriers in the formation of their contracts, such as depriving them of the defense of insolvency, or bankruptcy of the assured, but nothing in the statutes affects the terms of the policy here considered which requires as a substantive matter a valid existing claim against the insured before a liability against the insurer in favor of a third party beneficiary can exist.

*Id.*

Like *Wild*, *Kenison*, and *Barnes*, *Wiechmann* involved a claim that never was properly in the case. The wrongful death claim abated shortly after the automobile accident and, therefore, failed at the time the case was filed. Here, in contrast, there was a valid claim when the amended third-party complaint was filed. The *Wiechmann* court distinguished its facts from a case with "valid existing claim against the insured" and a situation involving bankruptcy or insolvency. *Id.*

Wisconsin Statute 632.22 states that "[e]very liability insurance policy shall provide that the bankruptcy or insolvency of the insured shall not diminish any liability of the insurer to 3rd parties and that if execution against the insured is returned unsatisfied, an action may be maintained against the insurer to the extent that the liability is covered by the policy." The insurers are correct that § 632.22 does not apply to the present policy because of Wis. Stat. § 631.01, for the same reasons (as discussed in this court's June 2005 order) that § 632.24 does not apply. Further, the *Wiechmann* case preceded the passage of § 631.01, which by its terms limits the application of the legislative policy noted by that court.

14

Nevertheless, the insurers' own policies state that "[b]ankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part."[3]  (Mullins Aff. of 5/16/05 (dkt #134), Ex. A at 31, 44.)  In any event, the parties contend that Colorado law applies to interpretation of the policy.  Under Colorado law, insurance contracts are construed according to the general law of contracts, and the intent of a written instrument is determined from its plain language.  *Parrish Chiro. Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1055 (Colo. 1994).  When a policy provision is clear and unambiguous, "courts should neither rewrite it nor limit its effect by a strained construction."  *Id.*  If there is ambiguity, the policy is construed in favor of the insured.  *Id.*

Here, as this court stated in its prior order, "[a] fair reading of this contract language covers not only the fact of bankruptcy, but also related proceedings in a bankruptcy court, including a Chapter 11 liquidation plan and a liquidating trust promulgated pursuant to a confirmed Chapter 11 plan."  (Decision & Order of 6/20/05 at 16.)  Even if the policy provision regarding bankruptcy of the insured is ambiguous as to what happens at the conclusion of bankruptcy proceedings, reading the provision in favor of the insured (and thus its creditors) results in an interpretation that the termination of a liquidating trust is included within the scope of the word "bankruptcy."  The Seventh Circuit has found that even an insured's discharge in bankruptcy did not preclude a third party's claim against the insured for the purpose of obtaining recovery against the insurer.  *In re Shondel*, 950 F.2d 1301 (7th

---

[3]As used in several cases, "coverage parts" are different coverages that may each be provided by the same insurer under one policy.  For instance, the policy in *Bank-Matteson v. Star Insurance Company (In re Rose Investments Inc.)* included coverages under a Commercial General Liability (CGL) Coverage Part, a Commercial Property Coverage Part, a Commercial Crime Coverage Part, and a Commercial Inland Marine Coverage Part. No. 93 B 13926, 1996 WL 596359, at *7 (Bankr. N.D. Ill. Sept. 16, 1996).  The "comprehensive insurance policy" in *Rocker v. USAA Casualty Insurance Co.* included a CGL part and a commercial umbrella coverage part.  2006 WI 26, ¶ 2 n.4, 289 Wis. 2d 294, ¶ 2 n.4.  Here, "Coverage Part" refers to the entire CGL policy.

15

Cir. 1991); *see also* 7A Russ & Segalla, *supra*, § 103:18, at 103-44 ("Where the obligation of the insurer is against liability, however, the insolvency or bankruptcy of the insured has no effect on the obligation of the insurer. . . . Accordingly, the discharge in bankruptcy of the insured does not discharge the liability insurer's obligation under its policy.").  According to the Seventh Circuit, a bankruptcy discharge "'is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured.'"  *In re Shondel*, 950 F.2d at 1308 (quoting *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 975 (11th Cir. 1989)).  The same can be said for the termination of a liquidating trust created under the terms of a confirmed Chapter 11 plan.

The insurers contend that the bankruptcy clause's reference to relief from "obligations under this Coverage Part" incorporates all the limitations of the policy, including the "no action" clause.  According to the insurers, the no action clause prohibits a person from directly suing the insurers regardless of whether the insured is solvent or bankrupt, and if Colorado Cyclist's argument is accepted then the bankruptcy provision would be permitted to override the no action clause, inconsistent with the policy language.  This court disagrees.

First, the no action clause is not an "obligation" of the insurer under the Coverage Part but rather the insurer's attempt to minimize its exposure to litigation.  Second, if the bankruptcy clause is given effect, the no action clause is overridden by state statute, eliminating any conflict between contract provisions.  The reverse is not true.  If the Chapter 11 bankruptcy of the insured and possible dissolution of the liquidating trust mean that § 803.04(2)(a) is inapplicable, and new life is given to the no action clause, the bankruptcy provision of the policy is rendered meaningless.

Further, notwithstanding the inapplication of § 632.22 to this particular insurance policy, public policy mandates a finding that the insurers are to remain in this case even if the

16

liquidating trust has terminated. Otherwise, the insurer gets a windfall, as it received premiums for providing liability coverage from which it would escape based on pure happenstance, at the expense of a third party prosecuting a claim under the policy. As between an innocent third party who seeks recovery for injury caused by a defunct company and an insurer who received premiums for coverage of such injuries and but-for the financial failure of the insured would have to provide coverage, public policy favors the third party.[4]

For all of these reasons, the insurers' motion for summary judgment against Colorado Cyclist based on the termination of the Baxter trust will be denied, and summary judgment will be granted for Colorado Cyclist.

D.     Cooperation Clause and Contractual Liability Exclusion

The insurers move for summary judgment against the Baxter trust and, it appears, Colorado Cyclist (because its claim against the insurers derives from the policy between the Baxter trust and the insurers), based on the "Cooperation Clause" and "Contractual Liability Exclusion" in the policies. The insurers submit that the Baxter trust colluded with Colorado Cyclist in getting the bankruptcy court to permit Colorado Cyclist to bring its claim, disqualifying the Baxter trust from receiving any payments under the policies.

The policies require the insured to cooperate with the insurer "in the investigation or settlement of the claim or defense against the 'suit.'" (Mullins Aff. filed 5/16/05 (dkt #134), Ex. A at 31.) Recovery under an insurance policy may be forfeited if the insured fails to cooperate in a material and substantial way, in violation of a policy provision.

---

[4]"Under the terms of a liability policy, the liability of the insurer is absolute upon the happening of the loss." 7A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 103:11, at 103-29 (2005). In contrast, under an indemnity policy "the insurer has no obligation to satisfy the claim until such time as the insured has actually paid it, so that if the insured's insolvency or bankruptcy prevents him or her from satisfying a claim, the insurer incurs no liability." *Id.* at 103-31. A finding in favor of the insurers would result in this CGL policy being treated like an indemnity policy, creating a windfall for the insurers.

*Am. Mfrs. Mut. Ins. Co. v. Seco/Warwick Corp.*, 266 F. Supp. 2d 1259, 1266 (D. Colo. 2003). The purpose of such a Cooperation Clause is to obligate the insured not to take any deliberate action that would substantially and adversely affect the insurer's defense or handling of the claim. *Id.*

However, the insurers have failed to prove that the stipulation between the Baxter trust and Colorado Cyclist in bankruptcy court constituted a failure to cooperate. First, permission for Colorado Cyclist's claim here – i.e., the waiver of the bar date and the lifting of the stay – came from the bankruptcy court, not from the Baxter trust. It is mere speculation whether the Baxter trust's stipulation had any effect on the bankruptcy court's decision to enter the order. Colorado Cyclist could have filed a motion on its own; the motion may have been granted, regardless of whether the Baxter trust agreed. In *International Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, for instance, even with opposition from the debtor, the Seventh Circuit found the requisite cause to lift an automatic stay where a creditor sought to sue the debtor solely to obtain recovery from the debtor's insurer. 938 F.2d 731 (7th Cir. 1991). In *In re Shondel*, the Seventh Circuit affirmed the reopening of a bankruptcy case and modification of a permanent injunction, even following a discharge, to permit a third-party's recovery from an insurer. 950 F.2d 1301 (7th Cir. 1991). Here, the Chapter 11 case was still open at the time the stipulation was entered, making it even more likely than in *In re Shondel* that the court would have granted Colorado Cyclist's motion, with or without the Baxter trust's stipulation.

Second, this court is unconvinced that stipulating to a waiver of the bar date and a lifting of the stay constitutes collusion with an adverse party. Had Schwinn/GT never filed a Chapter 11 petition, the insurers would have been on the hook to defend the claim brought

18

by Colorado Cyclist and to pay any judgment. Further, the insurers had no right to any claims bar date in the Chapter 11 case or stay any litigation; and the stay and bar date arose only out of the inadvertent circumstance that the insured filed a Chapter 11 case. The resolution of claims against a debtor's estate in a Chapter 11, including whether to fight relief from a Chapter 11 stay or bar date, should not constitute collusion allowing the insurers to escape their obligations. Although a cooperation clause may be breached where an insured "appears to be assisting the claimant in the maintenance of his or her action," 7A Russ & Segalla, *supra*, § 199:33, at 199-62, more than the stipulation at issue is required to show assistance. Cases cited by the treatise as examples of a breach of the cooperation clause include active assistance such as the concealment of material facts. *Id.* at 199-64. On the other hand, an insured's bargaining with a claimant to seek recovery only from the insurer, in a case where damages were justified, is noted as *not* breaching the cooperating clause. *Id.* at 199-66. Here, the Baxter trust's stipulation was not active assistance.

The same is true of accepting service of the amended third-party complaint by counsel for the Baxter trust. *See*, 14 Russ & Segalla, *supra*, § 199:34, at 199-66 ("An insured does not, by waiving personal service of process and voluntarily entering his or her appearance, violate a cooperation clause."). Unless the insured submits to service in a place where it would not otherwise be amenable to suit, voluntary acceptance of service does not prejudice the insurer's defense such that the cooperation clause is violated. *Id.* at 199-67; *see Elliott v. Metro. Cas. Ins. Co.*, 250 F.2d 680, 684 (10th Cir. 1957) (stating that voluntary submission to process may not prejudice the defense or violate a cooperation clause "where substituted or other service may bring the parties before the same court"); *Am. Fire & Cas. Co. v. Collura*, 163 So. 2d 784, 788 (Fla. Dist. Ct. App. 1964) ("The mere voluntary

19

submission to service of process by an insured does not, standing alone, necessarily constitute a violation of the cooperation clause of an insurance policy – particularly where substituted or other service of process is available to the plaintiff."). While the insurers point to *Mayflower Insurance Co. v. Osborne*, 326 F.2d 461, 464 (4th Cir. 1964), that case merely states that the cooperation clause is breached by a collusive prearrangement between the insured and a claimant to voluntarily submit to service of process in a state that would not otherwise have personal jurisdiction. Here, the insurer's defense was not prejudiced when service was accepted, and the insured did not go out of its way to submit to service in a jurisdiction where it could not otherwise have been sued. The Baxter trust was served in Colorado, where its counsel resided and where the Chapter 11 case was filed. As this case was already proceeding in Wisconsin, there was no attempt to collude to establish jurisdiction in Colorado. The insurers have pointed to no difference in how they would defend this case if Colorado Cyclist had hired a process server in Colorado to serve the Baxter trust's trustee instead.

The policies prohibit the insured from "voluntarily mak[ing] a payment, assum[ing] any obligation, or incur[ring] any expense, other than for first aid," without the insurers' consent. (Mullins Aff. filed 5/16/05 (dkt #134), Ex. A at 31, 44.) However, this language does not demonstrate that the insurers are entitled to summary judgment. The Baxter trust's stipulation no way resulted in a payment by or expense for the Baxter trust and did not include any assumption of an obligation. In *American Manufacturers Mutual Insurance Co.*, cited by the insurers, the insured violated a cooperation clause by entering into a settlement in which it admitted its liability and assigned to the injured party its right to seek indemnity from the insurers. 266 F. Supp. 2d at 1263, 1268. No such admission of liability occurred here. The stipulation in no way exposed the Baxter trust directly to unwarranted

20

liability or damages; it merely allowed a claim to go forward, with the outcome of the claim being unclear.

For the same reason, the insurers fail to establish any "assumption of liability in a contract or agreement" for purposes of the Contractual Liability Exclusion. The stipulation, which simply advised the bankruptcy court that the claim could proceed, did not concede or assume liability on the part of the Baxter trust or the insurers. Any actual liability or obligation will arise only after litigation of Colorado Cyclist's claim. In *Weger v. United Fire and Casualty Co.*, the Colorado Court of Appeals found that "liability assumed by contract" meant a hold-harmless or indemnification agreement. 796 P.2d 72, 74 (Colo. Ct. App. 1990). No such contract exists here; the stipulation filed in the Chapter 11 case is not such an agreement.

## DEFAULT JUDGMENT

The insurers seek default judgment against the Baxter trust. However, they rely on service of their cross-claim on Lawrence Bass, rather than on the Baxter trust itself, and they fail to establish that at the time they served the cross-claim on Bass he was authorized by the Baxter trust to accept service on its behalf. Further, as discussed above, a question of fact exists as to whether, on the date the cross-claim was filed and the date of service on Bass, the Baxter trust was a suable entity. Therefore, the motion for default judgment must be denied.

## CONCLUSION

For the foregoing reasons,

IT IS ORDERED that Royal and Columbia's motion for summary judgment against Colorado Cyclist's third-party claims is denied.

IT IS FURTHER ORDERED that Royal and Columbia's motion for default judgment or summary judgment against the Baxter trust is denied.

The court seeing no reason for these issues to continue further in the case,

IT IS FURTHER ORDERED that as to the issues discussed in sections C and D above regarding direct action, the Cooperation Clause, and the Contractual Liability Exclusion, summary judgment is granted in favor of Colorado Cyclist.

Although the June 20, 2005, order granted summary judgment in favor of the insurers against the claims of the Engebretsons, those claims were not formally dismissed. Therefore, to clarify the record,

IT IS FURTHER ORDERED that the claims of the Engebretsons against Royal and Columbia are dismissed.

Finally,

IT IS ORDERED that a scheduling conference is set for **November 1, 2006, at 8:30 a.m.** in Courtroom 222, U. S. Courthouse, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, at which time a trial date will be set.

Dated at Milwaukee, Wisconsin, this 6th day of October, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge